UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICHAEL SHAYNE DURDEN,            }
TDCJ-CID NO. 1027051,              }
     Petitioner,                   }
v.                                 }    CIVIL ACTION NO. H-06-3992
                                   }
NATHANIEL QUARTERMAN,              }
     Respondent.                   }

OPINION ON DISMISSAL

Petitioner Michael Shayne Durden, a state inmate proceeding *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging disciplinary case number 2006133392 for participating in a riot. (Docket Entry No.1). Pending are respondent's motion for summary judgment (Docket Entry No.8), petitioner's response and supplemental response to the motion for summary judgment (Docket Entries No.12, No.15), and petitioner's motion for leave to file an amended petition and to conduct additional discovery. (Docket Entry No.12-2). Upon consideration of the entire record, the Court will grant respondent's motion and deny petitioner federal habeas relief.

I. BACKGROUND

Petitioner was convicted in the 219th Judicial District Court of Collin County, Texas in cause number 219-80546-91 of burglary of a habitation, upon a plea of guilty, and sentenced to twenty-five years confinement in TDCJ-CID. (Docket Entry No.1). Petitioner is also incarcerated pursuant to three other judgments and sentences from the 199th Judicial District Court of Collin County, Texas from his convictions for burglary of a habitation in cause numbers 199-80933-99, 199-80034-99, and 199-80935-99. (Docket Entry No.8). Petitioner is

1

serving these sentences concurrently with his sentence in cause number 219-80546-91. (*Id.*). Petitioner is entitled to release on mandatory supervision. (Docket Entry No.1).

Petitioner does not contest his underlying convictions but challenges a disciplinary proceeding wherein he was found guilty of participating in a riot. Petitioner was assessed punishment at fifteen days of solitary confinement, a reduction in class line status, forty-five days commissary and recreation restriction, and revocation of 150 days of good time credit. (*Id.*). He unsuccessfully appealed the disciplinary violation through TDCJ-CID's grievance procedures. (*Id.*).

Petitioner alleges the following events gave rise to his claims in the pending petition: On January 15, 2006, approximately ten Hispanic inmates, who were affiliated with a prison gang, began to punch, hit and strike petitioner and three other white inmates without provocation. Because they feared for their lives, petitioner and the other white inmates fought back. At least one guard witnessed the fight but took no action to assist the white inmates. The four white inmates were charged with a disciplinary violation, but only two of the Hispanic inmates were charged with the same violation. Most, if not all, of the investigating officers were Hispanic.

At petitioner's disciplinary hearing, the hearing officer stopped petitioner from questioning the charging officer about the number of Hispanic offenders that participated in the fight and how many of those were charged with a disciplinary violation. Petitioner's counsel substitute refused to ask any questions regarding the race or national origin of all of the offenders involved in the fight, even though petitioner specifically requested that she ask the same. The

2

two officers who testified at the hearing were vague about the number of Hispanics who were present in the dayroom.

Petitioner's counsel substitute also denied his request to call the Security Threat Group Officer ("STGO") as a witness to establish that all the Hispanic inmates involved in the incident were members of a prison gang that were often involved in gang attacks on white and black offenders. Likewise, counsel substitute denied his request to call the other white inmates who were involved in the incident to testify that the incident was racially based. (*Id.*).

Hearing Officer Castro, who is also Hispanic, denied petitioner's invocation of self-defense, warning petitioner that "there is no 'self-defense' fighting in TDCJ." (*Id.*). Petitioner was found guilty of the offense of participating in a riot and forfeited 150 days of good conduct credit, in addition to other punishment.

Based on the foregoing, petitioner seeks federal habeas relief on the following grounds:

1. He was denied the right to fully cross-examine the charging officer at the disciplinary hearing;

2. He was denied the benefit of the defense or self-defense; alternatively, the evidence was insufficient to charge and to convict him of participating in a riot because he did not initiate the riot but responded to the aggressive acts of other inmates in self-defense;

3. He was subjected to selective prosecution in violation of due process and/or equal protection;

4. He was denied the effective assistance of counsel substitute because she failed to enter STG information, perform her duties, and grant his request for witness testimony.

(Docket Entry No.1).

Respondent moves for summary judgment on grounds that petitioner failed to exhaust his administrative remedies with respect to his second, third, and fourth claims and that such claims are procedurally barred because the time for filing such claims has expired. (Docket Entry No.8). Respondent also contends that petitioner's disciplinary punishment complied with due process requirements and that his good time was forfeited in compliance with due process requirements. (*Id.*). Respondent further contends that petitioner was not wrongfully convicted, subjected to selective prosecution, or denied the effective assistance of counsel. (*Id.*).

## II. MOTIONS TO AMEND

Before addressing the merits of respondent's motion for summary judgment and petitioner's response to the motion, the Court will consider petitioner's motions to amend his petition and to supplement and/or amend his response to the motion for summary judgment.

The motions for leave to amend filed by petitioner are governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides as follows:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). Because the respondent has already filed an answer in response to the original petition in this case and has not consented to the amendment, petitioner requires permission to amend in this instance. The decision whether to grant or deny a request for leave to amend is a matter vested within the district court's discretion. *See Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000). When considering a permissive motion for leave to amend,

4

the district court may consider "undue delay, bad faith or dilatory motive on the part of the movant," as well as "undue prejudice to the opposing party by virtue of allowance of the amendment," as reasons to deny leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Petitioner seeks to file an amended petition to circumvent and correct deficiencies in his original petition that respondent noted in his motion for summary judgment. (Docket Entry No.13, page 14). In his First Amended Petition, petitioner rephrased and expanded his arguments with respect to his claim of selective prosecution and denial of the benefit of self-defense. He incorporated his claims of ineffective assistance of substitute counsel within such arguments. (Docket Entry No.13). Other than the desire to cure such deficiencies, petitioner provides no justification for his decision to delay an amendment until after the respondent filed his answer in this case. Because the respondent has already answered the original petition, allowing the proposed amendment would unquestionably cause prejudice, additional delay, and the expenditure of more scarce resources. Accordingly, the Court DENIES petitioner's request for leave to file an amended petition. (Docket Entry No.12-3). The Clerk shall STRIKE petitioner's First Amended Petition. (Docket Entry No.13).

Petitioner also seeks leave to file a supplemental/amended response to respondent's motion for summary judgment to explain why he did not procedurally default on his unexhausted claims. (Docket Entry No.15). Because respondent will suffer no prejudice by the allowance of such an amendment to his response, the Court GRANTS Petitioner's Motion for Leave to File Supplemental/Amended Response to Respondent's Motion for Summary Judgment (Docket Entry No.15).

### III. DISCUSSION

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

#### A. Exhaustion of Administrative Remedies

Respondent moves for summary judgment on the ground that petitioner failed to exhaust his administrative remedies, thus rendering them procedurally defaulted. (Docket Entry No.8). Respondent contends that petitioner raised the confrontation claim in his Step One grievance and self-defense and selective prosecution claims in his Step Two grievance but he did not challenge the ineffectiveness of his substitute counsel in either grievance. (*Id.*). Respondent submitted copies of the grievances. (Docket Entry No.9).

A state inmate must exhaust all available state remedies before proceeding in federal court unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b), (c). Although decisions about prison

grievances are made by TDCJ, and not by "courts of the State," there is no valid reason that the exhaustion requirement found in 28 U.S.C. § 2254(b) should not also apply where a prisoner is required to pursue the administrative grievance process. *See Prieser v. Rodriguez*, 411 U.S. 475, 492 (1973) (pointing to the prison grievance process and noting that, because the "internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems"). In fact, the Fifth Circuit has long held that inmates seeking relief from prison disciplinary cases must exhaust their available administrative remedies before pursuing a federal writ of habeas corpus. *Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978); *see also Kimbrell v. Cockrell*, 311 F.3d 361, 364 (5th Cir. 2002) (holding that "the timely pendency of prison grievance procedures" tolls the statute of limitations for habeas corpus petitions found in 28 U.S.C. § 2244(d) because prisoners are required to pursue administrative remedies).

A prisoner must complete both steps of the grievance process to satisfy the exhaustion requirement. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Moreover, an administrative grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id.* at 522 (noting that "[i]n deciding how much detail is required in a given case . . . , a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally'"). In this case, petitioner's grievances implicitly raise his claims regarding self-defense and selective prosecution, which prison

7

officials addressed in their response to the grievance.[1]  Therefore, these claims are not subject to dismissal for non-exhaustion and will be addressed on the merits.

Petitioner concedes that he did not grieve the ineffectiveness of his counsel substitute.  He maintains that his claims against counsel substitute were mislabeled and that he

---

[1] In Step 1 Grievance Number 2006091023, petitioner complained that he was assaulted by members of a Hispanic prison gang in an orchestrated attack when he was called over to the water fountain.  When gang members began to attack him, other white inmates tried to unsuccessfully break up the attack.  Other Hispanic inmates joined in the fight and correctional officers were called to the scene.  Petitioner was charged with a disciplinary violation of participating in a riot, which he challenged on grounds that there was insufficient evident to substantiate the claim.  Petitioner complained that the testimony of the charging officer was insufficient to support the conviction because the officer admitted that he didn't see the incident from the start and he did not write a case on all of the inmates involved in the fight.  Petitioner further complained that he was not permitted to question the officer as to why all the Hispanic inmates were not charged with a disciplinary case.  Petitioner maintained that he did not intentionally participate in the fight but that he was attacked and knocked out by a gang member and stomped on the ground; he awoke to white inmates pulling gang members off of him. (Docket Entry No.9, Disciplinary Grievance Record).

In response, Warden R. Crites indicated that no procedural errors were identified and that a preponderance of evidence presented justified the finding of guilt.  (*Id.*).  Crites further indicated that upon a review by the UCC, petitioner had been recommended for a transfer to another unit. (*Id.*).

In Step 2 Grievance Number 2006091023, petitioner again complained that he was the victim of a gang assault and that the charging officer did not see the entire incident; therefore, he could not testify that petitioner intentionally participated in the fight.  (*Id.*).  Petitioner also complained that only two Hispanic inmates were charged with disciplinary cases but that the charging officer admitted at the disciplinary hearing that numerous parties were involved.  Other officers corroborated this statement.  Petitioner, however, was not allowed to question the charging officer as to why only two Hispanic inmates were charged with a disciplinary case, which petitioner claims shows extreme bias and racial discrimination.  Petitioner further claims that such denial defeated his claim of self-defense in spite of the obvious injuries that he sustained showing that he was the victim of more than two attackers.  In addition, petitioner claims that the recommendation of a transfer bears out the truth of his claim that he was assaulted by gang members.  (*Id.*).

In response, Kelli Ward indicated that petitioner's points of appeal of major disciplinary case number 2006013392 were without merit.  She noted that the evidence was sufficient to support a finding of guilt and that "[w]hile self-defense may mitigate the penalty, it does not necessarily exonerate you from the charge."  (*Id.*).

intended to file a claim that he was denied the opportunity to obtain and present documentary evidence. Petitioner argues that he should be excused from his failure to grieve this matter because the grievance rules do not allow the inmate to appeal the actions or inactions of the counsel substitute; therefore, any effort to complain of the same would have been futile. (Docket Entry No.15).

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985). However, exceptions to the exhaustion requirement apply only in "extraordinary circumstances"; *DCP Farms v. Yeutter*, 957 F.2d 1183, 1189 (5th Cir. 1992); and petitioner bears the burden of demonstrating the futility of administrative review. *See Gardner v. School Bd. Caddo Parish*, 958 F.2d 108, 112 (5th Cir. 1992).

Petitioner is correct that any complaint about the effectiveness of counsel substitute would most likely be denied by prison officials. An inmate does not have a right to either retained or appointed counsel in a disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976). Because an inmate has no constitutional right to the assistance of counsel substitute, he cannot claim a right to habeas relief based on counsel substitute's performance. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (no right to counsel, no deprivation of ineffective assistance). Petitioner, however, concedes that his claims were not directed at the ineffectiveness of counsel substitute but at her refusal to obtain the witnesses and documentary evidence that he requested. Such claims are appropriately raised in a grievance appealing a

disciplinary conviction, especially in light of the fact that the disciplinary hearing record reflects that petitioner did not request a witness or documentary evidence. By failing to complain of substitute counsel's refusal to assist as requested, petitioner failed to give prison officials the opportunity to address such due process claims. Accordingly, petitioner fails to show that he exhausted his administrative remedies with respect to this claim and that his is the extraordinary case in which exhaustion should be excused. Because the claim is unexhausted and procedurally barred, the Court need not address the merits of such claim.

### B. Due Process

In the disciplinary hearing context a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Liberty interests emanate from either the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Liberty interests arising from state law are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted). Only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional

protection under the Due Process Clause.  *Id.* at 487.  *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995).

### 1. Loss of Privileges, Cell Restriction, Class Status

As a result of his disciplinary conviction, petitioner temporarily lost commissary and recreation privileges, he was restricted to his cell, and his class status was reduced.  According to well-settled precedent, sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns.  *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).  Limitations imposed upon commissary or recreational privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life.  *Id.*; *see also Sandin*, 515 U.S. at 486 (refusing to recognize a liberty interest in administrative segregation).  The Fifth Circuit has also decided that a reduction in a prisoner's class status and its potential impact on good-time credit earning ability are not protected by the Due Process Clause.  *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir.2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995).

Because lost privileges, a temporary cell restriction, and a reduction in class status do not implicate a constitutionally protected liberty interest, any challenge to these sanctions fails to state a claim that is cognizable on federal habeas corpus review.  Absent an allegation that the petitioner has been deprived of some right secured to him by the United States Constitution or laws of the United States, federal habeas corpus relief is not available.  *See Orellana*, 65 F.3d at 31; *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985).  Respondent is therefore entitled to summary judgment on the petitioner's claims concerning these sanctions.

## 2. Loss of Good-Time Credits

As a result of his disciplinary conviction, prison officials also revoked 150 days of good-time credit previously earned by petitioner. When a state creates a right to time credit for good conduct and recognizes that its revocation is an authorized sanction for misconduct, "a prisoner's interest therein is embraced within the Fourteenth Amendment 'liberty' concerns so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated." *Madison*, 104 F.3d at 768 (citing *Wolff*, 418 U.S. at 557). Texas law, however, provides that good-time credits apply only to eligibility for release on parole or mandatory supervision and do not affect the length of an inmate's sentence. *See* TEX. GOV'T CODE ANN. § 498.003; *Ex parte Montgomery*, 894 S.W.2d 324, 328 (Tex. Crim. App. 1995). The United States Supreme Court has recognized that the states have no duty to establish a parole system and that there is no constitutional right to be released on parole before the expiration of a valid sentence. *See Board of Pardons v. Allen*, 482 U.S. 369, 378 n. 10 (1987) (explaining that "statutes or regulations that provide that a parole board 'may' release an inmate on parole do not give rise to a protected liberty interest"); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11 (1979) (holding that a statute which "provides no more than a mere hope that the benefit will be obtained ... is not protected by due process"). In light of this authority, the Fifth Circuit has recognized that the Texas parole statutes create no constitutional right to release on parole because they encourage no expectancy of early release. *Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir. 1981). State prisoners in Texas "have no protected liberty interest in parole." *Johnson v. Rodriguez*, 110 F.3d

299, 308 (5th Cir. 1997). Therefore, any allegation by the petitioner that his disciplinary conviction has thwarted his release on parole does not establish a due process violation.

As a general rule, only disciplinary sanctions that either result in loss of good conduct time credits for inmates who are eligible for release on mandatory supervision or directly and adversely affect release on mandatory supervision will impose upon a liberty interest. *See Orellana*, 65 F.3d at 31-33. It is well settled that Texas inmates, such as petitioner, who are eligible for mandatory supervision release, have a protected liberty interest in earned good-time credits. *Teague v. Quarterman*, 482 F.3d 769, 776077 (5th Cir. 2007). Because petitioner had a liberty interest in good-time credit accrued toward early release on mandatory supervision, the revocation of those credits must comply with the minimum amount of procedural protection required under the circumstances. *See Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985); *Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000).

Prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Wolff*, 418 U.S. at 561. Thus, prison disciplinary hearings are "not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556 (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). The minimum amount of due process required for prison inmates under these circumstances includes: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the

evidence relied upon and the reason for the disciplinary action. *See Wolff*, 418 U.S. at 563-67. These requirements are flexible, however, and must necessarily be balanced against legitimate penological interests. *Superintendent, Massachusetts Correctional Institution*, 472 U.S. at 454.

Petitioner does not deny that he received advance notice of the charges against him. Likewise, petitioner does not dispute that he received a written statement of the fact finder, relating the evidence relied upon and the reasons for the decision. Rather, as outlined previously, the claims made by petitioner primarily concern the opportunity to cross-examine a witness, self-defense, and selective prosecution.

### a. Confrontation of Witness

Petitioner complains that he was not allowed to cross-examine the charging officer about the inmates who were in the dayroom at the time of the riot regarding their number, race and ethnicity, and gang affiliations; therefore, he was unable to effectively assert the defenses of selective prosecution and self-defense.[2] (Docket Entry No.1, No.12).

A prisoner has no general right to confront or cross-examine witnesses at a prison disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 315, 322 n.5 (1976); *Wolff*, 418 U.S. at 567-68; *Broussard v. Johnson*, 253 F.3d 874, 876 (5th Cir. 2001). Therefore, petitioner was not denied a constitutionally protected interest by the hearing officer's refusal to allow him to cross-examine the charging officer regarding race, gang affiliation, and so forth.

Petitioner's contention that he was not allowed to cross-examine the hearing officer in violation of TDCJ policy and procedure (Docket Entry No.12) does not entitle him to federal habeas relief. Failure to follow institutional rules and regulations, standing alone, does

---

[2] Petitioner does not claim that he was denied the opportunity to question the charging officer on all matters at the hearing.

14

not constitute a violation of petitioner's due process rights. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). "A prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

To the extent that petitioner complains that he was not allowed to present evidence of a racially-based attack by the Hispanic inmates, such claim must also fail. Due process requires that prison officials provide an inmate with the opportunity to call witnesses and present documentary evidence. *Wolff*, 418 U.S. at 563-66. Petitioner's disciplinary hearing records show that petitioner did not request witnesses or documentary evidence. (Docket Entry No.9). Respondent is entitled to summary judgment on this ground.

### b. Self-Defense

Petitioner contends that he was denied due process because he was charged with participating in a riot and convicted of the same even though he did not initiate the riot and fought back in self-defense. (Docket Entries No.1, No.12). Respondent argues that petitioner's self-defense claim must fail because the disciplinary charge of participating in a riot does not take into consideration any extraneous circumstances surrounding the event. (Docket Entry No.8). Respondent maintains that petitioner was afforded due process because the disciplinary findings were supported by a "modicum of evidence." (*Id*.).

Federal habeas review of the sufficiency of the evidence to support a disciplinary conviction is extremely limited. Due process requires only "some evidence to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457. The Supreme Court has determined that "[a]scertaining whether [the sufficiency-of-evidence] standard is satisfied does

not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455. "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d 534, 536-537 (5th Cir. 2001). The information provided in a written incident report standing alone can satisfy the "some evidence" standard. *Id.* at 537. "Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision." *Broussard*, 253 F.3d at 877.

In this case, petitioner was charged with a Level 1 offense, number 8. "Riot – when an offender, with two or more persons intentionally participates in conduct that creates danger or damage to property or injury to persons and substantially obstructs the performance of unit operations." (Docket Entry No.9, Offense Report); *see also* www.tdcj.state.tx.us/publications, TDCJ Disciplinary Rules and Procedures for Offenders, January, 2005, page 24. The charging officer specifically described the offense as follows, in pertinent part:

> Offender Durden, Michael, TDCJ No.1027051 intentionally participated with offenders Williams, Martin #68457, Rogers, David #1024985, Trevino, Paulino #630231, Torres, Tony #656177, Miller, Alvin #497065 in punching, hitting, and striking one another and created a danger of damage to property and injury to persons and substantially obstructed the performance of unit operations by delaying the 199 unit count and having additional staff respond to the incident. Chemical agents had to be administered to gain control and 7G1 section had to be partially locked down.

(Docket Entry No.9, Offense Report). Petitioner's complaint that that he should not have been charged with participating in a riot because the charging officer did not see the initial attack by Hispanic gang members or that he fought back only in self-defense is of no constitutional

moment. Officer Espinzo stated in the offense report that he observed petitioner and other inmates "engage in a physical altercation by punching, hitting and striking one another with closed fist." (Docket Entry No.8, Offense Report). Petitioner did not deny that he fought the Hispanic inmates but claimed in the Preliminary Investigation Report that he was assaulted by three offenders and that he was defending himself. (*Id.*, Preliminary Investigation Report). The record shows that in finding petitioner guilty of the disciplinary offense, the hearing officer relied upon the statement and testimony of the charging officer and witness testimony. (*Id.*, Disciplinary Report). Petitioner's argument that he was denied the benefit of self-defense must fail because there was "some evidence" to support the hearing officer's finding that petitioner rioted, as defined in the TDCJ publication. Accordingly, respondent is entitled to summary judgment on this ground.

### c. Selective Prosecution

Petitioner also complains that he was subject to selective prosecution because only a few of the many Hispanic inmates involved in the riot were charged with disciplinary violations while he and the three other white inmates received disciplinary cases as a result of the altercation. (Docket Entries No.1, No.12).

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. *Wolff*, 418 U.S. at 556. To establish an equal protection violation, petitioner must demonstrate that prison officials acted with a discriminatory purpose. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). "'Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have

on an identifiable group.'" *Id.* (quoting *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n.16 (1984)).  In this case, petitioner offers no proof of discriminatory purpose other than his personal belief that discrimination played a part in the decision to charge him and three other white inmates and two Hispanic inmates with a disciplinary violation.  Although the other Hispanic inmates who participated in the riot but were not charged with a disciplinary violation may have received more favorable treatment than petitioner and the other inmates who were disciplined, the fact that at least two Hispanic inmates were also charged defeats petitioner's discrimination claim based on race.

To the extent that petitioner contends that the hearing officer was impartial, such claim must also fail.  Other than the fact that the hearing officer was allegedly Hispanic, petitioner states no facts to show that the hearing officer was personally involved in the investigation or prosecution of the case or that he had any other personal involvement in the case.  *See Wolff*, 418 U.S. at 570-71, 592 (Marshall, J., concurring in part and dissenting in part).

Accordingly, respondent is entitled to summary judgment on this ground.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Petitioner's motion for leave to file an amended petition (Docket Entry No.12-3) is DENIED. The Clerk shall STRIKE petitioner's First Amended Petition from the docket.

2. Petitioner's motion for leave to file a supplemental/amended response to respondent's motion for summary judgment (Docket Entry No.15) is GRANTED.

3. Respondent's motion for summary judgment (Docket Entry No.8) is GRANTED.

4. Petitioner's petition for federal habeas relief is DENIED.

5. A certificate of appealability is DENIED.

6. This habeas action is DISMISSED with prejudice.

7. All pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 18th day of January, 2008.

                                              MELINDA HARMON
                                 UNITED STATES DISTRICT JUDGE